IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ABDULKARIM M. KRADI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. 3:08CV139–HEH ) |
| MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Denying Defendants' Motion to Dismiss and Granting Motion to Remand )

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, to Remand, filed on May 23, 2008. Defendants have filed a memorandum of law in support of their position. On May 23, 2008, Defendants served Plaintiff, proceeding *pro se*, with a *Roseboro* Notice, pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K). Plaintiff did not file a response within the required twenty days of the date on which Defendants' motion was filed. Therefore, this matter is properly before the court for review and disposition.

### I. Background

Plaintiff, Abdulkarim M. Kradi, a legal permanent resident of the United States, filed an N-400 application for naturalization with the United States Citizenship and Immigration Services ("USCIS") on June 28, 2003. On July 7, 2004, Plaintiff was interviewed by a

USCIS officer and passed his English proficiency and U.S. history examinations. On several subsequent occasions, Plaintiff contacted USCIS to inquire about the status of his case.[1] USCIS could not, however, finish processing Plaintiff's application because it had not received the results of a name check from the Federal Bureau of Investigation ("FBI").[2] On May 16, 2008, USCIS received the results of this background check, but has not yet had the opportunity to fully review the FBI's findings. Because of this delay in USCIS's receipt of the FBI name check results, USCIS must conduct a new IBIS check and a new interview, as these are now out of date.

Frustrated by an almost four-year delay in adjudicating his application, Plaintiff filed a Complaint with this Court on March 6, 2008. Though not requesting any specific relief, Plaintiff appears to ask the Court to adjudicate and approve his application for naturalization.

On May 23, 2008, Defendants filed their Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, Defendants contend that this Court should remand the matter to USCIS to rule on Plaintiff's application upon USCIS's analysis of the information recently provided by the FBI, completion of a new IBIS check, and

---

[1] Plaintiff contacted USCIS on August 2, 2005, May 14, 2007, and July 9, 2007. USCIS's responses to Plaintiff's inquiries were filed with the Complaint. (Docket No. 3.)

[2] Applicants for naturalization undergo a battery of background checks, including 1) an FBI fingerprint check for relevant criminal history; 2) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from numerous federal law enforcement agencies, and 3) an FBI name check, which analyzes FBI investigative databases containing information not necessarily revealed through the FBI fingerprint check or IBIS. (Ex. 1, Decl. of Hans J. Siebert 2.)

completion of a new interview with Plaintiff.

## II. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction, Plaintiff in this case, has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

## III. Analysis

### A. Defendants' Motion to Dismiss

Plaintiff, proceeding *pro se*, does not expressly assert jurisdiction in his Complaint. This Court agrees with Defendants' construction of the Complaint as a Petition for Writ of Mandamus asserting that more than 120 days have elapsed since his July 7, 2004 interview with a USCIS official, and that he is therefore entitled under 8 U.S.C. § 1447(b), the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 702, to have his naturalization application heard and adjudicated by this Court. Because the Court finds that it has jurisdiction under 8 U.S.C. § 1447(b), the Court will deny Defendants' Motion to Dismiss.

As outlined by § 1447, an applicant for naturalization may apply to a U.S. District Court for a hearing when "there is a failure to make a determination under [8 U.S.C. § 1446] before the end of the 120-day period after the date on which the examination is conducted

3

under such section." 8 U.S.C. § 1447(b). If a proper petition is filed, a "[district] court has jurisdiction over the matter." *Id.* Both parties agree that USCIS has not made a determination on Plaintiff's application.

Defendant contends that the term "examination" in 8 U.S.C. § 1447(b) refers to a "multifaceted process," meaning that an examination has not occurred and the 120-day period does not begin until USCIS receives all of the requisite information, including the results of all necessary background checks. This issue has generated a split among various courts, including courts within this district. *Compare Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005) (Ellis, J.), *and Martinez v. Gonzales*, 463 F. Supp. 2d 569 (E.D. Va. 2006) (Friedman, J.) (holding that "examination" refers to a process), *with Manzoor v. Chertoff*, 472 F. Supp. 2d 801 (E.D. Va. 2007) (Smith, J.) *and Ahmed v. Gonzales*, 509 F. Supp. 2d 556 (E.D. Va. 2007) (Lee, J.) (holding that "examination" refers to the initial interview by USCIS).

"Statutory interpretation necessarily begins with an analysis of the language of the statute." *In re Coleman*, 426 F.3d 719, 724-25 (4th Cir. 2005) (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985)). This analysis is conducted "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

In this case, § 1447(b) states that the 120-day period begins "after the date on which the examination is conducted." 8 U.S.C. § 1447(b). By using the terms "date" and "conducted," the statute contemplates that an "examination" is a singular event, the date of

4

the applicant's initial interview with USCIS. *See Etape v. Chertoff*, 497 F.3d 379, 386 (4th Cir. 2007) (noting that "[t]he 120-day period under § 1447(b) does not even begin to run until after the initial naturalization examination"). Had Congress intended for "examination" to refer to an extended process, it presumably would have utilized language such as "completed or concluded." *See Walji v. Gonzales*, 500 F.3d 432, 436 (5th Cir. 2007). Therefore, the statute's language indicates that an "examination" refers to a "distinct, single event." *Id.*; *see also id.* at 435 (noting that "the majority of courts addressing this issue have concluded that the term 'examination' in § 1447(b) refers to a discrete event—the agency's initial interview with the applicant—and that the 120-day period begins to run as of the date that interview is concluded").

This conclusion is further supported by examining the statute in context. Section 1446 outlines different procedures for the "investigation" and "examination" of applicants for naturalization, indicating that the two terms are distinct. For example, prior to naturalization, "an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization." 8 U.S.C. § 1446(a). The next subsection, however, requires the Attorney General to "designate employees of the Service to conduct examinations upon applications for naturalization." 8 U.S.C. § 1446(b). These employees are empowered to "take testimony," "administer oaths," and "to require by subpoena the attendance and testimony of witnesses." *See id.* Thus, "[w]hereas an 'examination' must be conducted by an employee of [US]CIS designated by the Attorney General, an 'investigation' may be conducted by an

5

employee of [US]CIS or an employee of the United States the Attorney General designates." *Walji*, 500 F.3d at 436. This section also states that the employee designated to conduct an examination "shall, *at the examination*, inform the applicant of the remedies available to the applicant under section 1447 of this title." 8 U.S.C. § 1446(b) (emphasis added). This language further indicates that "examination" refers to a singular event, the interview of the applicant by USCIS.

Therefore, this Court concludes that the 120-day period began following Plaintiff's initial interview with USCIS on July 7, 2004. Clearly, this period has elapsed without action from USCIS. Because of this "failure to make a determination," this Court possesses jurisdiction pursuant to 8 U.S.C. § 1447(b). Accordingly, Defendants' Motion to Dismiss will be denied.

Plaintiff also asserts that the Court possesses jurisdiction pursuant to the Mandamus Act and the Administrative Procedure Act. Because this Court finds that it has jurisdiction pursuant to 8 U.S.C. § 1447(b), an analysis of these claims is unnecessary.

## B. Defendants' Motion to Remand

When a court possesses subject matter jurisdiction pursuant to § 1447(b), it "may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." 8 U.S.C. § 1447(b). A properly filed petition provides a district court with exclusive jurisdiction over a naturalization application. *See Etape*, 497 F.3d at 385. This fact, however, "does not 'require' a district court 'to expend' judicial resources, for § 1447(b) allows a district court to remand a case immediately to the [US]CIS if it so

chooses." *Id.* at 387 (internal citation omitted). Indeed, the language of § 1447(b) merely provides for a "hearing on the matter" when the 120-day period elapses. *See* 8 U.S.C. § 1447(b).

Generally, a court "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context." *INS v. Ventura*, 537 U.S. 12, 16–17 (2002); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (noting that "judicial deference to the Executive Branch is especially appropriate in the immigration context").

USCIS's failure to take action on Plaintiff's application is based solely on the fact that it has only recently received the results of Plaintiff's FBI name check and has not had an opportunity to review those results. Because of this delay in the receipt of Plaintiff's name check results, USCIS must now conduct a new IBIS check and a new interview. As the Fourth Circuit has noted, "[w]hen the [US]CIS has good reasons for failing to act, certainly a district court has the option to remand the matter to give the agency additional time." *Etape*, 497 F.3d at 386 n.5. In this case, USCIS has clearly had "good reason" not to act on Plaintiff's application. Indeed, the Acting Field Office Director for the USCIS Norfolk Field Office stated that "[i]t would potentially risk the safety and security of the nation for USCIS to grant United States citizenship to anyone without first ensuring that the government's law enforcement databases do not contain verified derogatory information

about the alien."[3] (Ex. 1, Siebert Decl. 3.)

Further, by law, USCIS could not adjudicate Plaintiff's application until it had received the results of Plaintiff's FBI background checks.[4] *See* Pub. L. No. 105-119, Title I, 111 Stat. 2448, 2448–49 (1997) (codified at 8 U.S.C. § 1446). Now that the FBI has received the results, "there are issues requiring further inquiry by USCIS to determine the applicant's eligibility for naturalization." (Ex. 1, Siebert Decl. 3.) Thus, the Court finds that USCIS's failure to act on Plaintiff's application is reasonable and that remanding the case to provide the agency with additional time would be appropriate.

Accordingly, this Court will grant Defendants' Motion to Remand and remand the case to USCIS to adjudicate Plaintiff's application within a reasonable time upon analysis of the recent name check results, completion of a new IBIS check, and completion of a new interview.

---

[3]Indeed, Plaintiff's second fingerprint check, the results of which the FBI received on or about July 17, 2003, revealed an arrest and conviction for Petit Larceny. Plaintiff's updated fingerprint check, the results of which the FBI received on or about April 22, 2008, did not reveal any new convictions. (Ex. 1, Siebert Decl. 3.)

[4]This act states:

> [N]one of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed . . . .

Pub. L. No. 105-119, Title I, 111 Stat. 2448–49.

## IV. Conclusion

As noted by other courts, naturalization is, "appropriately, a goal that is not easily attained; the path is often long and arduous." *Laryea v. United States*, 300 F. Supp. 2d 404, 405 (E.D. Va. 2004). In this case, Plaintiff has been reasonably diligent in his attempts to obtain citizenship. Naturalization, however, is "merely a privilege, not a right." *Marcantonio v. United States*, 185 F.2d 934, 937 (4th Cir. 1951) (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)). Thus, the Court will remand the case to USCIS for its adjudication. Plaintiff, like many others similarly situated, must continue to wait.

An appropriate Order will accompany this Memorandum Opinion.

                                                        /s/
                                        Henry E. Hudson
                                        United States District Judge

Date: July 16, 2008
Richmond, VA